**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
CREGORY COLE,

                            Plaintiff,                        **REPORT AND**
                                                  **RECOMMENDATION**

      -against-

JOHN ROGERS and                              **CV 14-3216 (JFB) (AKT)**
POLICE OFFICER FLANNERY,

                           Defendants.
-------------------------------------------------------------x

# A. Kathleen Tomlinson, Magistrate Judge.

## I.      PRELIMINARY STATEMENT

*Pro se* Plaintiff Cregory Cole ("Plaintiff") brings this civil rights action, pursuant to

42 U.S.C. § 1983, against Nassau County Police Officers John L. Rogers and Matthew Flannery

(collectively "Defendants"). *See generally* Complaint ("Compl.") [DE 1]. Plaintiff alleges that

Defendants violated his rights by using excessive force during the course of his arrest. *See id*.

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. *See* Notice of Motion for Summary Judgment [DE 59]. Plaintiff opposes the motion

and cross-moves for summary judgment in his favor. *See generally* Plaintiff's Opposition ("Pl.'s

Opp'n") [DE 61].

       Judge Bianco referred the instant motions to this Court for a Report and

Recommendation as to whether either motion should be granted. *See* DE 63. Having carefully

reviewed the pleadings, the parties' motion papers and the applicable case law, this Court

respectfully recommends to Judge Bianco for the reasons which follow that Defendants' motion

for summary judgment be DENIED and that Plaintiff's cross-motion for summary judgment be

DENIED.

## II.  BACKGROUND

### A.  Factual Assertions of the Parties

The following facts are taken from the pleadings and the parties' motion papers.  Unless otherwise noted, the facts cited here are undisputed or the opposing party has not pointed to any evidence in the record to contradict those facts.  In considering summary judgment motions, the Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Hemphill v. Schott*, 141 F.3d 412, 415 (2d Cir. 1998)); *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).

On May 14, 2014, a witness observed Plaintiff at 40 Rutland Road, Hempstead, New York, the site of what was a private residence in foreclosure.  *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.'Mem.") [DE 60-2], at 2; Affidavit of Hempstead Police Officer Russell Harris ("Harris Aff."), annexed as Ex. C to the Attorney Declaration of Debra Urbano-DiSalvo [DE 60-4] ("Urbano-DiSalvo Decl."), ¶3.[1]  The witness notified the Village of Hempstead Police Department of Plaintiff's presence on the property.  Harris Aff., ¶3.  The trespasser was described as a "black male with dreadlocks and a red and blue striped shirt."  Defs.' Mem. at 2.   According to Village of Hempstead Police Officer Russell Harris ("P.O. Harris"), he responded to the call and was advised by Hempstead Police Sergeant Mark Kirichenko ("Sgt. Kirichenko") that he observed the Plaintiff, who matched the description provided by the witness, riding a bicycle away from the property.  Harris Aff., ¶¶3, 4.  Sgt. Kirichenko told P.O. Harris that he approached Plaintiff and ordered him to stop.  *Id*., ¶4.

---

[1]     Plaintiff testified that he had previously pled guilty to trespassing at the same property shortly before the incident at issue in this case.  *See* Transcript of Plaintiff's March 15, 2016 Deposition ("Pl.'s Dep."), annexed as Ex. H to the Urbano-Disalvo Decl.

Plaintiff, however, refused to comply with the sergeant's directive and continued to flee away from the sergeant on his bicycle. *Id*. Defendants assert that after riding his bicycle for some time, Plaintiff "jumped off of the bicycle and continued to flee on foot." Harris Aff., ¶4; Defs.' Mem. at 2. Plaintiff purportedly refused to stop and comply with police directives. Defs.' Mem. at 2. Defendant Police Officer John Rodgers ("P.O. Rodgers") was told by Sgt. Kirichencko that he had observed Plaintiff Cregory Cole who matched the description of the trespasser. *See* Affidavit of John L. Rodgers ("Rodgers Aff."), annexed as Ex. I to the Urbano-Disalvo Decl., ¶5. P.O. Rodgers joined in the chase and saw Plaintiff run through yards and hop over a fence. Rodgers Aff., ¶6. Rodgers was eventually able to stop Plaintiff and ordered him to the ground. He was unable to handcuff Plaintiff standing up since Plaintiff kept trying to flee. *Id*., ¶7. According to Rodgers, when Plaintiff refused to comply with this order, and Plaintiff resisted being handcuffed, both men fell "and we ended up tussling in the street." *Id.*, ¶6. Plaintiff was "flailing" his arms and legs. *Id*., ¶7 As a result of the struggle, Defendant Rogers states that he suffered an injury to his left elbow and was taken to the hospital. *Id*., ¶¶8, 9.

Plaintiff's account of the events of May 14, 2014 differs in various details. During his deposition, Plaintiff testified that he was riding his bicycle on "Rutland and Webster" when he saw a Hempstead police officer, whose name he did not remember, pull up on him. Pl.'s Dep. at 46. When the officer attempted to speak to him, he was scared and kept on riding. *Id*. Plaintiff admitted that he fled from Sgt. Kirichenko because he knew Kirichenko was a police officer -- he did not know until later that Kirichencko was a sergeant. *Id*. Based on the fact that he had filed two previous lawsuits against the police for excessive force and for exceeding their authority, Plaintiff testified that he "was scared" when the police officer stopped to ask him questions. *Id*. He continued to ride his bike. *Id*. According to the Plaintiff, the police officer

"couldn't tell me to stop." *Id.* at 47. When the officer tried to say something to him, he "refused to even have any words with him" because he believed he had not committed any crime. *Id.* When the officer continued to follow him, Plaintiff kept on riding. Id.

When more officers began following him, Plaintiff states that he rode to his mother's house on Front Street. *Id.* at 48. Arriving there, Plaintiff "parked my bike in my mom's backyard and I jumped off the bike." *Id.* When he asked the officers "what's the problem?," they jumped out of the car and chased him. Although he states that he asked the reason why he was being chased, he did not receive an answer. *Id.* Plaintiff continued to run because he was being chased. *Id.* at 50. One police officer tried to come in the yard while another tried to jump the gate, prompting Plaintiff to run again. *Id.* at 51. Plaintiff testified that he kept running, noting that "I was scared for my life" because the police officers had guns and he did not. *Id.* at 51.

Plaintiff further testified that he continued running from the officers but stopped again once he realized "all eyes" were on him. *Id.* at 52. When he asked again why the officers were chasing him, Plaintiff says Police Officer Rodgers proceeded to grab him and body-slam him on Front Street. *Id.* at 52, 61. After that, another police officer put him into a police car. *Id.* at 61. Plaintiff testified that the officer "wanted to make me get identified." *Id.* He says that he refused to get out of the car to "get identified." *Id.* The police officer forced him out of the car by his neck. *Id.* According to Plaintiff, he sustained cuts and bruises to his hand and leg, and had pain in his neck and entire body. *See* Compl. at 4; *see also* Pl.s' Dep. at 37-42, 62. In his opposition to Defendants' summary judgment motion, Plaintiff alleges that he could not exit the vehicle because Defendant Rogers had "damaged" his legs. Pl.s' Opp'n at 6. Officer Flannery therefore "chock[ed Plaintiff] to get out" of the vehicle. *Id.*

4

P.O. Harris states in his affidavit that after Plaintiff was taken into custody, police officers returned Plaintiff to the property for a show up identification.  Harris Aff., ¶ 6.  Harris further notes that Plaintiff refused to exit the rear of the patrol car for the identification as directed.  Harris Aff., ¶ 7.  As a result, according to Harris, Police Officer Flannery, the second named Defendant here, "simply pulled" Plaintiff from the vehicle and Plaintiff was identified by the witness who had notified the police earlier of Plaintiff's presence on the property.  *Id*.

As to Plaintiff's asserted injuries, Defendants submitted a "Police Department, County of Nassau, New York Physical Condition of Defendant Questionnaire."  *See* Urbano-DiSalvo Decl., Ex. D at 28.  According to the contents of the Questionnaire, Plaintiff communicated to officers that his legs were bruised, his left wrist was sprained and he had a lump on his head as a result of his encounter with the police.  *Id*.  The form also conveys that Plaintiff was observed limping and complaining of pain.  *Id.*  The form includes a section where arrestees can sign, certifying that the answers to the questionnaire are theirs and that the answers are true.  *Id*.  Plaintiff appears to have written "under duress" in that section of the form.  *Id*.

Plaintiff was subsequently taken to the Nassau County Medical Center.  Defs.' Mem. at 4.  According to a medical bill attached to Plaintiff's Opposition, Plaintiff visited the emergency room and received a CT scan, among other services.  *See* Pl.'s Opp'n at 2-4.  Plaintiff testified that he was not prescribed any medications but was given Motrin.  Pl.'s Dep. at 43.  According to Plaintiff's medical bill, Plaintiff incurred $3,638.09 in fees in connection with the visit.  Pl.'s Opp'n, at 3-4.[2]  Attached to the medical bill is a "Telegram Request" from the

---

[22]     Defendants argue that the NUMC Telegram Request and accompanying medical bills contained in Exhibits 1-3 of Plaintiff's Opposition are inadmissible hearsay documents. Defendants' Reply ("Reply") [DE 62], at 1.  The Court disagrees.  The Second Circuit has held that the same principles governing admissibility of evidence that are applicable at trial are also applicable to summary judgment.  *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

Nassau County Medical Center ("NUMC") seeking to have Plaintiff return to the emergency room. *Id*. at 2. Plaintiff testified, however, that he has not received any medical care for his injuries since that May 14 visit. Pl.'s Dep. at 39.

Plaintiff was charged with criminal trespass (NYS Penal Law §140.05), resisting arrest (NYS Penal Law §205.30), assault in the second degree (NYS Penal Law §120.05) and operating a bicycle without audible signal (NYS Vehicle & Traffic Law §1236.B.08). *Id*., ¶9. On February 4, 2016, Plaintiff pled guilty to disorderly conduct in satisfaction of certain charges against him. Defs.' Mem. at 4. A copy of Plaintiff's plea proceeding in the state court is annexed to the Urbano-DiSalvo Declaration as Exhibit E. In addition, a copy of the Certificate of Disposition is attached to the Urbano-DiSalvo Declaration as Exhibit F.

### B.    Relevant Procedural History

On May 22, 2014, Plaintiff filed a Complaint against Defendants and an application to proceed in *forma pauperis*, which was subsequently granted. *See generally* DE 1, 2, and 6. Defendants filed an Answer to the Complaint on July 15, 2014. *See* DE 14. Although Plaintiff

---

Admissibility, which the court itself determines, is distinguished from "validity of the underlying data," resolution of which is reserved for the fact-finder. *Id*. (citing *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir.1995); *Congress & Empire Spring,* 99 U.S. 645, 658 (1878); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988)) (citation omitted). It is "well established," however, that "even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) (citing *Bill Salter Advert., Inc. v. City of Brewton, Ala.,* No. 07-0081, 2008 WL 183237, at *4 n.10 (S.D. Ala. Jan. 18, 2008); Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003), cert. denied, 541 U.S. 937 (2004)). Moreover, the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986), explained that "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.… Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves…." In light of the foregoing case law, the Court denies Defendants' request that the Court not consider the NUMC Telegram Request and medical bills.

was present the Initial Conference on September 10, 2014, he failed to appear at the subsequent

status conference on January 13, 2015. *See* DE 20, 28. As a result, the Court issued an Order to

Show Cause directing Plaintiff to appear before the Court on February 11, 2015 and "show cause

why this case should not be dismissed for Plaintiff's failure to prosecute his claims and to

comply with orders issued by this Court." DE 27. Plaintiff appeared for the Show Cause

Hearing, at which time an initial discovery plan was implemented. In addition, a working

conference to address discovery responses and the next phase of discovery was scheduled for

April 9, 2015 at 2 p.m. *See* DE 30. Plaintiff, however, failed to appear at that conference.

DE 34.

In an effort to accommodate Plaintiff, given the apparent difficulty he had faced getting

to the courthouse, the Court scheduled a telephone status conference for May 7, 2015 at 3 p.m.

*See* DE 34. The Court warned Plaintiff that if he failed to participate in the call, the Court would

take steps to recommend to Judge Bianco that the case be dismissed. *Id*. In compliance with the

Court's directive, Plaintiff appeared at the May 7, 2015 telephone conference. DE 36. At that

time, Plaintiff informed the Court that he served a letter motion to amend the Complaint on

Defendants' counsel. *Id*. The Court noted that it had never received the motion nor did one

appear on the electronic docket. *Id*. The Court advised the Plaintiff that if he expected Judge

Bianco to take any action on the motion, then he had to properly file it with the Court. *Id*.

Plaintiff then informed the Court that he had not served a motion to amend in the instant case,

but rather had done so in connection with a different case. DE 38.

During the May 7, 2015 telephone conference, Defendants' Counsel notified the Court

that Defendants wished to move for summary judgment. DE 36. To that end, the Court set a

deadline of June 30, 2015 for counsel to file the necessary letter requesting a pre-motion

conference before Judge Bianco. *Id*. In a letter dated June 15, 2015, Defendants' counsel requested a stay of the instant action until Plaintiff's pending criminal charges were resolved. DE 42. Judge Bianco granted Defendants' motion on July 8, 2015 and stayed these proceedings. He directed the parties to provide the Court with an update on the status of the criminal case every sixty days. DE 43. In Defendants' May 3, 2016 status report, counsel informed the Court that Plaintiff had pled guilty to disorderly conduct in satisfaction of certain charges lodged against him. DE 48. On May 4, 2016, Judge Bianco lifted the stay in this action and directed the parties to resume discovery. DE 50. Shortly thereafter, this Court set a deadline of June 3, 2016 for the parties to submit any pre-motion conference request letters to Judge Bianco for purposes of making a motion for summary judgment. DE 51. After Defendants submitted their letter request, Judge Bianco waived the pre-motion conference requirement and set a briefing schedule DE 57. The current motion followed.

### C.     The Instant Motion

Defendants served Plaintiff with a motion for summary judgment accompanied by a "Local Rule 56.2 Notice to Pro se Litigants Opposing Motion for Summary Judgment." DE 59, 60-1. In support of their motion, Defendants submitted a Memorandum of Law, Rule 56.1 Statement of Undisputed Facts and a Declaration by Attorney Urbano-Disalvo. *See* DE 60, 2-4. The following documents are attached exhibits to Attorney Urbano-DiSalvo's Declaration:

(1) Plaintiff's Complaint;  (2) Defendants' Answer ;  (3) Village of Hempstead Police Officer Russell Harris' Affidavit; (4) copies of the Village of Hempstead's Police Department arrest records for the Plaintiff;  (5) Nassau County Police Department Physical Condition of Defendant Questionnaire; (6) transcript of Plaintiff's Plea and the February 4, 2016 Sentencing proceeding in the First District Court; (7) the Certificate of Disposition ;  (8) the Affidavit of Patricia Perez, Village Clerk for the Village of Hempstead ;  (9) transcript of Plaintiff's March 16, 2015 deposition conducted in connection with this case; and (8) Village of Hempstead Police Officer John Rodgers' Affidavit.  *See* DE 60, 1-7.

On August 19, 2016, Plaintiff filed an Opposition to Defendants' motion and cross-moved for summary judgment.[3]  *See generally* Pl.'s Opp'n.  Defendants filed their reply on September 6, 2016.  *See generally* Defs.' Reply.  In an Order dated October 6, 2016, Judge Bianco referred Defendants' motion for summary judgment and Plaintiff's cross-motion for

---

[3]     Defendants complied with their obligations under Local Civil Rule 56.2, making Plaintiff aware of his obligations under the Rules by providing Plaintiff with a copy of the full texts of Federal Rule 56 and Local Civil Rule 56.1.  *See* DE 60-1.  Defendants argue that because Plaintiff failed to comply with Fed. R. Civ. P. 56, as well as Local Rule 7.1, his cross-motion for summary judgment must be denied.  "Although a plaintiff's failure to respond or contest the facts set forth in a Rule 56.1 statement generally constitutes an admission of those facts, '[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.'"  *Soliman v. Daimler AG*, No. CV 10-408, 2011 WL 6945707, at *1 n.2 (E.D.N.Y. Aug. 8, 2011) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)); *see Viscusi v. Proctor & Gamble*, No. 05–CV–01528, 2007 WL 2071546, at *9 n. 1 (E.D.N.Y. July 16, 2007) (exercising discretion to not deem admitted defendant's unchallenged statement of undisputed facts given plaintiff's *pro se* status)).  In light of Plaintiff's *pro se* status, the Court will overlook the defects in Plaintiff's filing and "will deem admitted only those facts that are supported by admissible evidence and not controverted by other admissible evidence in the record."  *Roman v. Nat'l Sec. Agency*, No. 07–CV–4502, 2009 WL 303686, at *2 n. 1 (E.D.N.Y. Feb. 9, 2009); *see Soliman*, 2011 WL 6945707, at *1 n.2.  The Court notes where Plaintiff disputes Defendants' assertions but where those assertions are not supported by evidence.

summary judgment to this Court for a Report and Recommendation as to whether the motions

should be granted.  DE 63.

## III.  <u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." *Gonzalez v. City of Schenectady*, 728

F.3d 149, 154 (2d Cir. 2013);  *Tracy v. Freshwater*, 623 F.3d. 90, 95 (2010).  "A fact is material

if it 'might affect the outcome of the suit under governing law.'"  *Spinelli v. City of N.Y.*, 579

F.3d 160, 166 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  A genuine issue of material fact exists "where the evidence is such that a reasonable

jury could decide in the non-movant's favor."  *Beyer v. County of Nassau*, 524 F.3d 160, 163

(citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007));  *see United Transp. Union v.*

*Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).

The moving party bears the initial burden of establishing the absence of any genuine

issue of material fact.  *See Anderson*, 477 U.S. at 256;  *Mihalik v. Credit Agricole Cheuvreux N.*

*Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013);  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.

2008).  To determine whether the moving party has satisfied this burden, the "Court is 'required

to resolve all ambiguities and draw all permissible factual inferences in favor of the'" non-

moving party.  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citing *Terry v.*

*Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted));  *Doro v. Sheet*

*Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007);  *Woodman v. WWOR–TV, Inc.*,

411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a *prima facie* entitlement to summary judgment, the burden then shifts to the non-movant to present evidence that gives rise to a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In reviewing this evidence, the Court must determine whether it "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243. The disagreement need not be resolved conclusively in favor of the non-movant. *See id.* at 249. "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (citing *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–289 (1968)); *see Spinelli*, 579 F.3d at 166. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Simmons v. Nieves*, 377 Fed. Appx. 75 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In reviewing the record in connection with the above analysis, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d. Cir. 2006)) (internal quotation marks omitted); *see Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) ("[A] pro se complaint is entitled to a particularly liberal reading."); *see also Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (holding that courts have an obligation to construe pro se complaints liberally and to examine them with "special solicitude").

"When a *pro se* litigant is involved, although the same standards for summary judgment apply, the pro se litigant 'should be given special latitude in responding to a summary judgment motion.'" *Laster v. Mancini*, No. 07-8265, 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013) (quoting *Gonzalez v. Long*, 889 F. Supp. 639 (E.D.N.Y. 1995)) (citing *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988) ("This court has recently stated that special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment."); *Delgado v. Koehler*, 1993 WL 227715 (S.D.N.Y. June 19, 1993)).  Nevertheless, a *pro se* litigant cannot rely solely upon the pleadings, *see Salahuddin*, 467 F.3d at 273, or "conclusory allegations or unsubstantiated speculation" to defeat summary judgment. *Brown*, 654 F.3d at 358 (quoting *Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)); *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").  Rather, the *pro se* litigant "must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (party opposing summary judgment "must bring to the district court's attention some affirmative indication that his [or her] version of relevant events is not fanciful").  Summary judgment is required where the *pro se* litigant, as the non-moving party, fails to make a showing sufficient to establish the existence of an element essential to his or her case and on which the litigant will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. 317, 322-23 (1986); *Dobbs v. Dobbs*, No. 06-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to 'isolate and dispose of factually unsupported claims….'").

## IV.    DISCUSSION

Plaintiff alleges that Defendants "violated [Plaintiff] by using excessive force" in the course of Plaintiff's arrest.  Compl. at 4.[4]  Defendants move for summary judgment arguing that the claim cannot survive as a matter of law on the following grounds:  "[(1)] the police officers['] use of force was entirely reasonable under the circumstances, [(2)] the officers are entitled to a qualified immunity [(3)] and the injuries alleged by plaintiff were *de minimus*."  Defs.' Mem. at 1.  In addition to his opposition to Defendants' motion, Plaintiff also cross-moves for summary judgment in his favor.  *See generally* Pl.'s Opp'n.

### A.    42 U.S.C. Section 1983

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured. . . .

---

[4]      Attached to Plaintiff's Opposition is a "Declaration of Irrevocable Trust."  Pl.'s Opp'n at 7-10.  Based on Plaintiff's deposition testimony, it appears Plaintiff may have attached this document as an attempt to plead a claim of false arrest under Section 1983 and/or under New York State Law.  *See id.*, at 7-11.  However, Plaintiff has not set forth any factual allegations, either in his Amended Complaint or his opposition papers, to support a claim that Defendants wrongfully arrested him.  Even if Plaintiff had pleaded a cause of action for false arrest, "a conviction based on a voluntary plea of guilty—even to a lesser charge []—establishes probable cause, thereby precluding a subsequent claim of false arrest and false imprisonment."  *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 376 (E.D.N.Y. 2013) (citing *Dickerson v. Napolitano,* 604 F.3d 732, 751 (2d Cir. 2010)) ("Probable cause is a complete defense to any action for false arrest or malicious prosecution in New York.");  *see Cameron v. Fogerty*, 806 F.2d 380, 387 (2d Cir. 1986) (citing *Broughton v. State,* 37 N.Y.2d 451, 458 (1975) (Harper & James §§ 4.11, 4.12)) ("Thus, the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.").  Here, Plaintiff pleaded guilty to disorderly conduct in satisfaction of certain charges lodged against him.  *See* DE 60-5, Exhibit E, at 29-42;  *see also* DE 48.  In light of the case law discussed above, a claim for false arrest cannot stand.

42 U.S.C. § 1983. "Section 1983 does not create substantive rights," *Lopez v. Bay Shore Union Free School District*, 668 F. Supp. 2d 406, 416 (E.D.N.Y.) (citing *Morris–Hayes v. Board of Educ. of Chester Union Free School Dist.*, 423 F.3d 153, 159 (2d Cir. 2005)); rather, it equips aggrieved individuals with a cause of action against those who, acting under color of state law, deprive them of federal rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Thomas*, 165 F.3d at 142. Thus, to state a claim under §1983, a plaintiff must allege "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Rae v. County. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)); *see Corneio v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

Here, it is undisputed that Defendants were acting under color of state law when they allegedly used excessive force. *See Hodge v. Village. of Southampton*, 838 F. Supp. 2d 67, 74 (E.D.N.Y. 2012); *see also Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 466 (E.D.N.Y. 2011). Accordingly, the Court must determine whether the conduct ascribed to the Defendants deprived Plaintiff of a constitutionally protected right.

### 1. *Excessive Force and Qualified Immunity*

Plaintiff alleges that Defendants "violated [him] by using excessive force," Compl. at 4, and cross-moves for summary judgment on that claim. *See generally* Pl.'s Opp'n. Defendants argue that Plaintiff's claims cannot survive summary judgment because the force employed was reasonable under the circumstances and, in the alternative, Defendants are entitled to qualified immunity. *See generally* Defs.' Mem. The Court turns first to the excessive force issue.

a.    **Excessive Force Standard**

Claims that law enforcement officials used excessive force during an arrest invoke rights protected by the Fourth Amendment.  *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…);  *Graham v. Connor*, 490 U.S. 386, 394-95 (U.S. 1989).  Here, the record demonstrates that the alleged use of excessive force occurred in connection with Plaintiff's arrest for suspected trespassing, among other things.  Plaintiff has therefore alleged that Defendants violated a clearly-established constitutional right, namely, the Fourth Amendment.

In assessing whether sufficient evidence exists to conclude that a police officer's use of force violates the Fourth Amendment, a court must determine whether the officer's conduct was objectively reasonable under the circumstances, irrespective of the individual officer's "intent or motivation."  *Graham*, 490 U.S. at 397.  An officer has the right to use some degree of force or the threat of force when effectuating an arrest.  *Id.*, at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)).  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Graham v. City of New York.*, 928 F. Supp. 2d 610, 617 (E.D.N.Y. 2013) (citing *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010);  *Graham*, 490 U.S. at 397).  A court must engage in a fact intensive analysis in which it balances the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal quotation marks omitted).  To that end, a court must carefully consider the totality of the circumstances, which include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

15

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Graham*, 490 U.S. at 396; *Jackson v. City of New York,* 939 F. Supp. 2d 235, 253 (E.D.N.Y. 2013), *aff'd*, 606 Fed. Appx. 618 (2d Cir. 2015).

A claim for excessive force may not survive a motion for summary judgment if the alleged force is *de minimis*. *Vogeler v. Colbath*, No. 04-6071, 2005 WL 2482549, at *10 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment where the plaintiffs alleged that the defendant police officers handcuffed them too tightly and lifted them off of the ground by their arms but suffered no "measurable harm"); *Bradley v. Village of Greenwood Lake*, 376 F. Supp. 2d 528, 535 n.4 (S.D.N.Y. 2005); *see United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) (citing *Hudson v. McMillian*, 503 U.S. 1, 7-9 (1992)); *see also Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Jackson*, 939 F. Supp. 2d, at 231 (citing *Lemmo v. McKoy*, No. 08-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)). Moreover, emotional distress unaccompanied by any physical injury has been held to be insufficient to support a claim for excessive force. *See Roundtree v. City of New York*, 778 F. Supp. 614, 620, 622 (E.D.N.Y.1991) (granting motion to dismiss where defendant police officer pushed the plaintiff into a patrol vehicle causing the plaintiff emotional pain and suffering but no physical injury); *see also Jennejahn v. Village of Avon*, 575 F. Supp. 2d 473, 478, 480-81 (W.D.N.Y. 2008) (granting summary judgment when plaintiff suffered emotional distress but no "demonstrable physical injury").

That being said, the fact that a plaintiff does not sustain a severe injury is not dispositive. Courts in this circuit have permitted excessive force claims to survive summary judgment in cases where the plaintiff suffered only minor injuries such as bruising and/or swelling, particularly where the pain was more than short-term. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) (denying summary judgment when plaintiff suffered bruising that lasted a couple of weeks); *see also Porath v. Bird*, 11-cv-963, 2013 WL 2418253, at *7 (N.D.N.Y. June 3, 2013) (citing *Robison*, 821 F.2d at 924) ("[E]ven if the injuries suffered were neither permanent nor severe, a plaintiff may still recover under the Fourth Amendment if the force used was unreasonable and excessive."); *Lemmo,* 2011 WL 843974, at *5-6; *but see Johnson v. Police Officer #17969*, No. 99-3964, 2000 WL 1877090, at *5 (S.D.N.Y. December 27, 2000), *aff'd*, 19 Fed. Appx. 16 (2d. Cir. 2001) ("[A]lthough the severity of plaintiff's alleged injuries is not dispositive, it is nonetheless highly relevant to the reasonableness of the force applied.")

### b.  Qualified Immunity Standard

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)).  A government official is entitled to a qualified immunity defense when it is "'objectively reasonable' for him [or her] to believe that his [or her] actions were lawful at the time of the challenged act." *Lennon*, 66 F.3d at 420-21 (2d Cir. 1995) (citing *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)); *see* Robison, 821 F.2d at 921); *see also Davis v. County. of Nassau*, No. 11-0076, 2013 WL 66021, at *5 (E.D.N.Y. Jan. 3, 2013).  Determining the reasonableness of an official's belief that his or her conduct was lawful requires a fact specific analysis which considers, among other circumstances,

17

the severity of the crime committed, the threat of danger the suspect poses to society and whether the suspect attempted to resist arrest. *Thomas*, 165 F.3d at 143 (citing *Graham*, 490 U.S. at 396). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas*, 165 F.3d at 143 (internal quotation marks omitted) (quoting *Lennon*, 66 F.3d at 420 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

### c.     Application to Police Officer Rogers' Conduct

Defendants argue that the Plaintiff has failed to produce sufficient evidence to prove the existence of genuine issues of material fact over whether Defendants' use of force was reasonable. The Court finds, however, that there is a genuine dispute over the sequence of events leading up to Defendant Rogers' physical encounter with the Plaintiff. The contrast between Plaintiff's version of his acts and the conduct of the Hempstead police officers, and the affidavits of Police Officers Harris and Rodgers and Sgt. Kirichenko, has been set forth at length in Section II *supra* of this Report and Recommendation. Likewise, the description of the degree of force used on the Plaintiff while taking him into custody varies markedly between the parties. Since the dispute involves a material fact, namely, the degree of force and the resulting injury, the Court cannot conclude that no reasonable jury could find that Defendant Rodgers and the other officers' use of force in these circumstances was unreasonable or, in the alternative, that Defendant Rodgers' use of force was reasonable in these circumstances.

Defendants claim that Plaintiff resisted lawful arrest by Defendant Rodgers when Plaintiff rode away from the officers on his bicycle and then ran by foot. Defs.' Mem. at 2. Plaintiff does not deny that he eventually ran from the Defendants, whom he knew were police

officers. *See* Pl.'s Dep. at 54. Plaintiff alleges in his opposition papers, however, that he stopped fleeing prior to his physical encounter with Defendants:[5]

> When I stop at my Mothers house I ask the Officer why are they following me and they came running at me so I ran and hoped o over my mother's fence and then stopped running when I saw on going traffic. I was order to get on the ground but continue to stand so Officer John Rogers took it personal upon himself to pick me up to body slam me to ground….

Pl.'s Opp'n. at 5-6. Consistent with this scenario, Plaintiff testified during his deposition that immediately prior to his being taken into custody, he stopped and inquired why the officers were pursuing him:

> As I continue to run, I realize everybody looking, I have the whole, basically all eyes on me, so I stopped. Because I know they can't do anything to me now. As I stopped, I asked them what seems to be the problem, why chasing me? Officer Rogers grabs me and body slams me right on Front Street…In actuality I stopped and, and that is where he slammed me.

Pl.'s Dep. at 52, 55.

---

[5]      As previously discussed, the Court must construe Plaintiff's pleadings liberally to raise the strongest arguments that they suggest. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). In doing so, the Court may consider factual allegations raised in Plaintiff's opposition papers "to supplement the allegations in the complaint." *Williams v. Wellness Med. Care, P.C.*, No. 11-5566, 2013 WL 5420985, at *1 (S.D.N.Y. Sept. 27, 2013) (citing *Salvatierra v. Connolly,* No. 09-3722, 2010 WL 5480756 at *25 n.3 (S.D.N.Y. Sept. 1, 2010), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011) (internal quotation marks omitted); *Sommersett v. City of New York*, No. 09-5916, 2011 WL 2565301, at *3 (S.D.N.Y. 2011) (noting that the court may consider statements in the *pro se* plaintiff's opposition papers "to supplement or clarify the plaintiff's pleaded allegations"); *Ibok v. Sector*, No. 05-6584, 2006 WL 302336, at * 1, n.1 (S.D.N.Y. Feb. 9, 2006) ("The Court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of *pro se* litigants.").

Defendants' account of the events varies directly from Plaintiff's in that it is not clear that Plaintiff came to a full stop prior to his physical encounter with Defendant Rodgers.  In this regard, Defendants state the following

> Plaintiff ran through yards and hopped over a fence, before Officer Rodgers eventually was able to stop him in the street in the vicinity of 849 Front Street.  When Officer Rodgers tried to arrest him for trespass, plaintiff resisted this lawful arrest and he and Officer Rodgers ended up tussling in the street.  Defs.' Mem. at 3.

> The defendant did then flee E/B on Front St. resulting in a foot pursuit by Sgt. Kirichencko and PO J. Rogers. The officers caught up to the defendant and ordered him to the ground in which he refused to do so, and P.O. Rogers had to use physical force to get the defendant to the ground and place him into custody. Misdemeanor Complaint, annexed as Ex. C to the Urbano-DiSalvo Decl.

> PO. J Rogers observed the defendant fleeing from Sgt. Kirichencko and then engaged in the foot pursuit. The foot pursuit resulted in P.O Rogers having to use physical force in order to place the defendant into custody. After refusing to stop the defendant did then struggled with Po. Rogers upon catching up with him.  Felony Complaint, annexed as Ex. C to the Urbano-DiSalvo Decl.

> Police Officer Rodgers chased the defendant in front of 849 Front street where he attempted to effectuate a lawful arrest and the defendant resisted arrest.    Crime Report-Hempstead Police Department, annexed as Ex. C to the Urbano-DiSalvo Decl.

> The defendant jumped off his bicycle and a foot pursuit occurred. Police Officer Rodgers chased the defendant in front of 849 Front street where he attempted to effectuate a lawful arrest and the defendant resisted arrest.  Hempstead Police Department, annexed as Ex. C to the Urbano-Disalvo Decl.

> I chased Cole, as he ran through yards and hopped over a fence. I eventually was able to stop Cole was in the street in the vicinity of 849 Front Street. I tried to arrest him, however, Cole resisted my lawful arrest and we ended up tussling in the street. Rodgers Aff., annexed as Ex. I to the Urbano-Disalvo Decl., ¶ 6.

The factual dispute here is both evident and material.  If we accept Plaintiff's timeline of events as true and assume Plaintiff did in fact stop and inquire into why the police officers were pursuing him, then the question arises whether Plaintiff was actively resisting arrest at that juncture and at what point did Defendant Rodger begin to have physical contact with him. *Compare with Crowell v. Kirkpatrick*, 400 F. App'x 592, 594-95 (2d Cir. 2010) (defendant officers' use of taser as a last resort was deemed reasonable where plaintiffs who were trespassing, but did not pose a threat to others, were actively resisting arrest).  Under Plaintiff's version of the facts, the Court cannot now say that no reasonable jury could find that "body-slamming" Plaintiff, while he was stopped and attempting to elicit what the problem was for the officers, was unreasonable.  This premise takes into account that (1) the Defendants suspected Plaintiff of committing the relatively minor crime of trespass;  (2) more than one officer was on the scene;  (3) the record gives no indication that Defendants believed Plaintiff was armed and dangerous or that Plaintiff actually was armed and dangerous;  and (4) there is no mention of environmental factors inhibiting Defendant Rodgers pursuit of Plaintiff.  *See Porath*, 2013 WL 2418253, at *5-7 (N.D.N.Y. June 3, 2013)[6];  *see also Garcia v. Greco*, No. 05- 9587, 2010 WL 446446, *7 (S.D.N.Y. Feb. 9, 2010) (in dismissing the plaintiff's excessive force claim, the court took into consideration the fact that the defendants reasonably believed the plaintiff was armed

---

[6]    In *Porath*, the court held that there existed genuine issues of material fact as to whether the *pro se* plaintiff posed a dangerous threat to the defendant police officers. *Porath*, 2013 WL 2418253, at *6.  The plaintiff was not armed at the time of the arrest and did not assault the officers during the arrest. *Id*.  Moreover, the assistance of other officers was available and there were no environmental factors complicating the arrest. *Id*.  The court noted that there were also disputed issues of material fact whether the plaintiff resisted arrest. *Id*. at *7.  Although it was "undisputed that Porath evaded arrest at least once for several hours," the parties provided conflicting accounts of whether the plaintiff attempted to run from the officer "after being ordered to drop on the ground," and whether the plaintiff resisted being handcuffed. *See id*.  Therefore, the court could not conclude that the defendant officer's conduct was objectively reasonable as a matter of law. *Id*.

and dangerous as he had previously been armed with a loaded semi-automatic weapon while fleeing from police officers).

Even crediting Defendant Rodgers' version of the facts, and accept that some degree of force was necessary to effectuate plaintiff's arrest, "that does not mean that, as a matter of law, the extent or duration of the force allegedly used was objectively reasonable." *See Pierre-Antoine v. City of New York*, No. 04-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (citing *Sullivan v. Gagnier*, 225 F.3d 161, 1665-66 (2d Cir. 2000)) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit….It is clear, therefore, that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest.").

Moreover, Courts in the Second Circuit have denied summary judgment motions in cases involving force similar to the force alleged in the instant case. *See Sash v. United States.*, 674 F. Supp. 2d 531, 538 (S.D.N.Y. 2009) ("Tackling an arrestee on the street and forcibly shoving him into a metal gate when he offers no resistance certainly could be actionable conduct (although Sash's damages may be minimal.)"); *see also Ragland v. City of Mount Vernon*, No. 11-1317, 2013 WL 4038616, *6 (denying defendant officers' motion for summary judgment when the plaintiff was forcibly removed from his bicycle without warning, pushed up against a fence and slammed to the ground.); *but see Vogeler v. Colbath*, No. 04–CV–6071, 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (The plaintiffs failed to state a claim for excessive force when they alleged that that they were lifted from the ground by their arms while lying face down, handcuffed.).

Defendants rely, in part, on *Robison v. Via*, 821 F.2d 913 (2d Cir. 1987) in support of their argument that the force alleged by Plaintiff is insufficient to withstand a summary judgment motion. Defs.' Mem. at 8. A review of the entirety of the Second Circuit's opinion, however, persuades this Court to deny Defendants' summary judgment motion, not grant it. By way of background, *Robison* involved the conduct of two defendants, Via, an assistant state's attorney, and Robison, a state trooper. *See id*. at 915-17. The defendants were investigating a complaint that Robison's daughter was the victim of sexual abuse. *Id*. at 916. Robison testified that at some point during the investigation, Via and Harrison attempted to separate her from her daughter by pushing and pulling and prying at her fingers. *Id*. at 923. The court noted that this was the "entire extent of the force ascribed by Robison to Via." *Id*. Robison did not allege in her complaint that Via even touched her. *Id*. The court found that "[n]one of Robison's allegations against Via comes close to describing force, that was injurious, malicious, or excessive." *Id*. ("The meager assertion that Via had pushed or pulled or pried at Robison's fingers, even if it contradicted Via's statement that she had not so much as touched Robison, created at most an issue that was not material since it was as entirely insufficient to show excessive force."). The Second Circuit reversed the district court's denial of Via's motion for summary judgment.

The facts involved in Via's summary judgment motion are distinguishable from those in the instant case. The force alleged by Plaintiff here is greater than the "pulling," "pushing" and "prying" of fingers ascribed to Via. Plaintiff maintains that Defendants "body slammed him" onto the ground, causing him to sustain physical injuries to his hands, wrist, legs and head. *See* Compl. at 4; *see also* Pl.'s Opp'n. at 6; Pl.'s Dep. at 52. Moreover, unlike *Robison*, Plaintiff has consistently alleged the specific nature of the physical encounter with the police officers.

*See* Compl. at 4;  Pl.'s Opp'n. at 6;  Pl.'s Dep. at 52.  The Court finds that the facts alleged in the instant case against Defendant Rodgers are, if anything, more akin to those alleged against the second defendant in *Robison*, Officer Harrison, whose summary judgment motion was denied — a denial affirmed by the Second Circuit.  *Robison*, 821 F.2d at 924.  Robison testified that Defendant Harrison "pushed her against the inside of the door of her car, yanked her out, threw her up against the fender and twisted her arm behind her back," causing the plaintiff to sustain bruises that lasted a "couple weeks."  *Id*. at 923-24 (internal quotation marks omitted).  The court in *Robison* explained it "held that assertions such as these are sufficient to prevent the summary dismissal of a Section 1983 claim for excessive force."  *Id*. at 924 (citing *Bellows v. Dainack*, 555 F.2d 1105, 1106 & n.1 (2d. Cir. 1977)).  Here, Plaintiff alleges that Defendant Rodgers "body slammed" him and that Defendant Flannery "chocked" him, causing him to sustain bruising, cuts and swelling.

Defendants further argue that the Complaint should be dismissed because Plaintiff's injuries were *de minimis*.  *See* Defs.' Mem. at 7-9.  As a preliminary matter, whether Plaintiff's injuries were in fact *de minimis* is a disputed question.  Plaintiff alleges that he sustained "cuts and bruises" to his hands, and "scratches," and that his right leg was "cut, swollen, bruised" from being "body slammed" onto the ground.  *See generally* Pl.'s Dep. at 37-41.  According to the police department's physical condition questionnaire, it appears Plaintiff communicated that his legs were bruised, his left wrist was sprained and he had a lump on his head.  *See* Questionnaire, annexed as Ex. D. to Urbano-Disalvo Decl.  The form further provides that Plaintiff was observed limping and complaining of pain.  *Id*.  Moreover, Plaintiff was taken to the emergency room at NUMC after the May 14, 2014 arrest and he produced a medical bill for $3,638.09.  Pl.'s

Opp'n. at 3-4. Plaintiff also submitted a Telegram Request sent by NUMC on May 15, 2014 directing Plaintiff to return to the Emergency Room regarding his visit the day before. *Id*. at 2.

Defendants also point to Plaintiff's failure to seek further medical treatment after his May 14 hospital visit as evidence that his alleged injuries were *de minimis*. DE 60-2, at 12. That argument is unpersuasive. Plaintiff explained during his deposition that he did not seek additional medical care for his injuries because he cannot afford it and does not have Medicaid. Pl.'s Dep. at 44. Plaintiff's failure to seek additional treatment does not defeat his claim. *See Robison*, 821 F.2d at 924 ("While Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim.") (citing *Norris v. District of Columbia*, 737 F.2d 1148, 1150–52 (D.C. Cir. 1984); *Bowman v. Casler*, 622 F. Supp. 836, 838 (N.D.N.Y. 1985)).

Even assuming for the moment and for the sake of argument that Plaintiff's injuries were *de minimis*, the Court has already established that such factor is not dispositive in the context of Section 1983, which provides that "a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury." *Amato v. City of Saratoga Springs*, 170 F.3d. 311, 317 (2d Cir. 1999) (citing *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir. 1984)); *see also Lemmo*, 2011 WL 843974, at *7. Courts in this circuit have denied a defendant police officer's motion for summary judgment when the only physical injury the plaintiff sustained was bruising that lasted a couple of weeks. *See Robison*, 821 F. 2d at 924; *see also Jackson v. City of New York*, 939 F. Supp. 2d 235, 253 (E.D.N.Y. 2013) (finding that "courts in the Second Circuit have allowed plaintiffs to pursue excessive force and unreasonable handcuffing claims even where the injury

was not permanent or severe, where the force used was excessive and gratuitous") (citing *Lemmo*, 2011 WL 843974, at *5; *Davenport v. County of Suffolk*, 99–CV–3088, 2007 WL 608125 (E.D.N.Y. Feb. 23, 2007) (permitting the plaintiff to amend his complaint to add a claim for excessive force where he alleged arresting officer banged his head against the top of the police car)); *Maxwell v. City of New York*, 380 F. 3d 106, 109 (2004) (vacating grant of summary judgment on plaintiff's excessive force claim when plaintiff alleged that she was violently swung and jerked around by her handcuffs and that she was shoved into the police car causing her to strike her head against the partition, resulting in post-concussive syndrome); *but see Vogeler*, 2005 WL 2482549, at *11 (granting summary judgment for defendant on the grounds that Plaintiff "failed to show that such action was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale."); *Hamilton v. Broomfield*, 95-CV-3241, 1998 WL 17697, *2 (S.D.N.Y. Jan. 20, 1998) (dismissing the plaintiff's claim for excessive force where he sustained "a bloody lip, a red mark and swelling on the leg, and pain from handcuffs that were too tight.").

In *Davenport v. County of Suffolk*, 99-cv-3088, 2007 WL 608125, *10-11 (E.D.N.Y. Feb. 23, 2007), the court permitted the plaintiff to amend his complaint to add claims for excessive force when the Plaintiff alleged that the arresting officer banged his head against the top of the police car during the course of his arrest, resulting in a "bump." Plaintiff did not provide any medical evidence in connection with his alleged injuries. *Id*., at *10. The court explained that "[a] jury may consider the lack of serious injury as evidence that the implemented force was not excessive, and may weigh it against Davenport's testimony, but that does not mean that there are no circumstances under which Davenport can prevail." *See id.*, at *11 (citing *Pierre-Antoine*, 2006 WL 1292076, at *5; *Murray v. Williams*, No. 05-CV-9438 (NRB), 2007

26

WL 430419, at *7 (S.D.N.Y. Feb. 7, 2007); *Amato v. City of Saratoga Springs*, 170 F.3d 311,

317 (2d Cir. 1999)); *but see Esmont*, 371 F. Supp. 2d at 213-15 (granting summary judgment

where defendant officers bumped the plaintiff's head as they placed her into their patrol car, left

her in a hot patrol car for ten minutes, and tightly handcuffed her).

The Court here is faced with two competing versions of Plaintiff's conduct and the extent

of Plaintiff's injuries.  "It is a settled rule that '[c]redibility assessments, choices between

conflicting versions of the events, and the weighing of evidence are matters for the jury, not for

the court on a motion for summary judgment.'"  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.

2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997)); *see Weyant v. Okst,* 101 F.

3d 845, 854 (2d Cir. 1996) ("[I]n ruling on a motion for summary judgment, the district court is

not to weigh the evidence but is instead required to view the evidence in the light most favorable

to the party opposing summary judgment, to draw all reasonable inferences in favor of that party,

and to eschew credibility assessments . . . .") (citing *Anderson*, 477 U.S. at 255;  Fed. R. Civ. P.

56(e)); *see also Robison*, 821 F.2d at 924 ("Resolution of credibility conflicts and the choice

between these conflicting versions are matters for the jury" and should not be decided by the

court on summary judgment).  For these reasons, the Court cannot find at this juncture based on

the conflicting facts presented that Defendant Rodgers' conduct was either reasonable or

unreasonable as a matter of law.

Defendant Rodgers also argues that he is shielded from liability based upon the doctrine

of qualified immunity.  Defs.' Mem. at 10-11.  Qualified immunity protects government officials

"from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Benson v.*

*Yaegar*, No. 05-CV-784, 2009 WL 1584324, at *6 (W.D.N.Y. 2009) (internal quotations

omitted) (citing *Zeller v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  In determining whether a defendant police officer is entitled to qualified immunity, a court must determine whether the injured party alleges the violation of a clearly-established constitutional or statutory right. *Thomas*, 165 F.3d at 142.  If the injured party does, then "qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right." *Id*. at 142-43;  *see Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 244 (E.D.N.Y. 2014).  The Court has already established that in setting forth an excessive force claim, Plaintiff has alleged that his Fourth Amendment right to be free from unreasonable searches and seizures was violated.  As to the second prong of the inquiry, the Court has concluded that there exists a genuine issues of material fact as to whether Defendants' use of force was reasonable.  This factual issue precludes the Court from now determining, as a matter of law, that Defendant Rodgers should have known that the challenged conduct violated Plaintiff's constitutional right. *See Breitkopf*, 41 F. Supp.3d, at 241-242.  That determination is best left for trial when the facts underlying Plaintiff's claims and the Defendants' defenses are fully developed.  The Court therefore recommends to Judge Bianco that Defendant Rodger's motion for summary judgment on qualified immunity grounds be denied.

### d.   <u>Application to Police Officer Flannery's Conduct</u>

The Court also finds that there exist genuine issues of material fact which preclude dismissing Plaintiff's excessive force claim against Defendant Flannery.   Plaintiff alleges that after he was arrested and placed inside of Defendants' patrol car, Officer Flannery used excessive force in pulling Plaintiff from the car by his neck and putting the Plaintiff back into the car in the same manner.  Compl. at 4.  In his opposition papers, Plaintiff characterizes the

maneuver as a "choke," stating that Officer Flannery "choke [sic] [him] to get out" of the car after Plaintiff refused to do so because Officer Rodgers "damaged [Plaintiff's] legs."  Pl.'s Opp'n. at 6.  Plaintiff claims that Officer Flannery's conduct caused him to suffer pain in his neck.  Pl.'s Dep. at 61.  Defendants acknowledge that Defendant Flannery removed Plaintiff from the vehicle after he refused to comply with the officer's directive.  Harris Aff., ¶ 7.  Defendants argue, however, that Defendant Flannery did not use excessive force, but rather "simply pulled plaintiff from the vehicle and then plaintiff was identified by the individual, who initially called the police describing the trespass." *Id*.  Defendants contend that Plaintiff's claim against Officer Flannery should be dismissed because the force used by Officer Flannery was reasonable as a matter of law.  In cross-moving for summary judgment, Plaintiff asserts that Officer Flannery's conduct was unreasonable as a matter of law.

Once again, the parties offer two different accounts of the manner in which Officer Flannery removed Plaintiff from the patrol vehicle and placed him back into it.  Accepting Plaintiff's version of the facts as true, and assuming that Plaintiff's failure to exit the vehicle when directed was due to his physical injuries, then the Court cannot at this point in time say that no reasonable jury could ever find that maneuvering Plaintiff by his neck was unreasonable under the circumstances.  In that same vein, accepting Defendants' version of the facts as true, the Court cannot say that Defendant Flannery's conduct was unreasonable as a matter of law.  Moreover, "[t]he Second Circuit has found that forcibly removing a non-violent arrestee from his or her car can be the basis of an excessive force claim." *Graham*, 928 F. Supp. 2d at 618-19 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123-24 (2d. Cir. 2004)).

Defendants also allege that Plaintiff's claim against Defendant Flannery should be dismissed on qualified immunity grounds.  Like the claim against Defendant Rodgers, the same

reasoning applies — there are genuine issues of material fact as to whether Defendant Flannery's use of force was reasonable. Therefore, the Court cannot dismiss this claim on qualified immunity grounds either. *See Mills v. Fenger*, 216 Fed. Appx. 7, 8-9 (2d Cir. 2006) (citing *Thomas*, 165 F.3d at 143) ("Because whether force is excessive turns on its reasonableness, we have held that "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

Based on the foregoing analysis, the Court respectfully recommends to Judge Bianco that both Plaintiff's and Defendants' motions for summary judgment be DENIED.

## V.    **STATE LAW CLAIMS**

Although Plaintiff does not explicitly allege violations of state law, the Complaint could be read as asserting state law claims for assault and battery.  *See Lin v. County of Monroe*, 66 F. Supp. 3d 341, 356 (W.D.N.Y. 2014).  Defendants argue that such claims must be dismissed on the grounds that Plaintiff failed to file a notice of claim in accordance with N.Y. Gen. Mun. Law Section 50–e(1)(b).  Defs.' Mem., at 11-12.  The Court agrees.  Pursuant to N.Y. Gen. Mun. Law Section 50–i(1), a plaintiff cannot bring a state law tort claim against a municipal entity or its employees until a notice of claim is made and served upon that municipality.  Notice provides the municipality with the opportunity to conduct a "prompt investigation" and "to make a more reasoned determination of the claim's validity," protecting the municipality's "limited indemnification fund from being diluted by unwarranted claims."  *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 540–41 (2d Cir. 1999) (citing *Davidson v. Bronx Mun. Hosp*., 64 N.Y.2d 59, 484 N.Y.S.2d 533, 535, 473 N.E.2d 761 (1984);  *Altmayer v. City of New York*, 149 A.D.2d 638, 540 N.Y.S.2d 459, 460 (2d Dep't 1989)).

Section 50–e of the New York General Municipal Law provides that the notice of claim must be filed within ninety days after the claim arises. "A federal court lacks the jurisdiction to waive the notice requirements of Gen. Mun. Law §§ 50–e and 50–i or to grant leave to file a late notice of claims for pendant state tort claims." *Roberts v. N.Y. City Dep't of Corr.*, No. 96 CV 3210, 1998 WL 391815, at *1 (E.D.N.Y. Apr. 30, 1998) (citing N.Y. Gen. Mun. Law § 50–e(7)). This Court, therefore, may not extend the period of time during which Plaintiff may file a notice of claim. Even if the Court did have jurisdiction to do so, "a motion for leave to file a late notice of claim must be made within one year and ninety days of the date on which the claim accrued." *Walker v. Village of Freeport*, No. 15-4646, 2016 WL 4133137, at *12 (E.D.N.Y. June 13, 2016) (citing N.Y. Gen. Mun. Law Section 50-i(1)). Here, the occurrence giving rise to the instant lawsuit took place on March 14, 2014, well over one year and ninety days ago. Therefore, Plaintiff's time to request leave to file a late notice of claim has expired. *See Maier v. New York City Police Dep't,* No. 08- 5104, 2009 WL 2915211, at *3 (E.D.N.Y. Sept. 1, 2009) (quoting *Pierson v. City of New York*, 56 N.Y.2d 950, 954 (1982)). Therefore, to the extent that the Complaint can be interpreted to assert state law claims for assault and battery, this Court respectfully recommends to Judge Bianco that those claims be dismissed.

## VI.    <u>CONCLUSION</u>

Based on the foregoing analysis, this Court respectfully recommends to Judge Bianco that Defendants' Rule 56 motion for summary judgment be DENIED, and that Plaintiff's Rule 56 cross-motion for summary judgment also be DENIED.

## VII.    <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. Any objections being filed by a *pro se* litigant are to be sent by first-class mail to the Clerk of the Court. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Defendants' counsel is directed to serve a copy of this Report and Recommendation upon the *Pro se* Plaintiff forthwith by overnight mail and first-class mail and to file proof of such service on ECF promptly.**

SO ORDERED.

Dated: Central Islip, New York
      March 6, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge